UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KYLE LEE PAYMENT,<br><br>              Plaintiff,<br><br>     v.<br><br>CHERYL ROIKO, PATRICK GLEBE,<br><br>              Defendants. | No. C14-5633 BHS-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  July 24, 2015** |

Defendants Cheryl Roiko and Patrick Glebe move for summary judgment pursuant to Fed. R. Civ. P. 56 for dismissal of Plaintiff's claims.  Dkt. 14.  In this 42 U.S.C. § 1983 action, Plaintiff Kyle Payment is proceeding pro se and *in forma pauperis.*  He alleges Defendants retaliated against him after he filed a Prison Rape Elimination Act (PREA) complaint in violation of the First Amendment, his placement in isolation for three days resulted in a violation of the Eighth Amendment due to his pre-existing mental health condition, and that the Defendants conspired against him to charge him with a false infraction in violation of the First, Eighth, and Fourteenth Amendments.  Dkt. 5.

The Court concludes that Defendants' motion for summary judgment should be granted and Plaintiff's claims against Defendants dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

# STATEMENT OF FACTS

**A.    PREA Complaint and Disciplinary Infraction**

Mr. Payment is housed at the Stafford Creek Corrections Center (SCCC). On March 26, 2013, Mr. Payment filed an emergency grievance alleging that after he was escorted back to his cell from Mental Health, "and after they turned off the handheld camera, Sgt. Ronnie Matsen stated 'Swain said until you give him a piece of that pretty little ass, you won't be getting a level around here.'" Mr. Payment stated that he took the statement to be a "request to engage in sexual intercourse with the unit C.U.S., and if I don't then I will not get my level." The grievance coordinator forwarded the grievance to the Shift Commander to be filed as a PREA complaint. Dkt. 15, Declaration of Cheryl Roiko, SCCC Classification Counselor 3, ¶ 4 and Attachment B.

According to Ms. Roiko, Department of Corrections (DOC) Policy 490.850, Response to and Investigation of Sexual Misconduct, outlines the procedure for responding to, and investigating, claims of sexual misconduct. Pursuant to DOC 490.850(XII)(B), offenders are subject to disciplinary sanctions if it is found the offender made a claim against a staff member by providing false or misleading information. Dkt. 15, Roiko Decl., ¶ 2 and Attachment A.

On March 27, 2013, Ms. Roiko was assigned to conduct the PREA investigation. She interviewed Sgt. Matsen; Correctional Officers Andrew Andring, James Houlton, Joseph Salvaggi, and Karylanna Roberts; Psychology Associate Tara Lund, and Grievance Coordinator Dennis Dahne. Dkt. 15, Roiko Decl., ¶ 6. Ms. Roiko did not feel it was necessary to interview Mr. Payment because he had provided a detailed statement through his grievance. Dkt. 15, Roiko Decl., ¶ 6 and Attachment C.

REPORT AND RECOMMENDATION - 2

Sgt. Matsen reported that on March 23, 2013, he and three other officers escorted Mr. Payment to his cell. During and after the escort, Mr. Payment told him that Superintendent Glebe and CUS Swain promised him that he would get his level (custody promotion). Sgt. Matsen informed Mr. Payment, as he had done several times that day, that his level was being denied because of Mr. Payment's behavior log entries over the previous few days. Mr. Payment insisted that he receive his level and stated that Sgt. Matsen would be answering the emergency grievances that Mr. Payment was filing. Sgt. Matsen denies that he made any sexually harassing statements to Mr. Payment. The other escort officers stated that they did not hear Sgt. Matsen make any sexually harassing statements to Mr. Payment. Dkt. 15, Roiko Decl., ¶ 6 and Attachment C. In his sworn declaration, Mr. Payment states again that Sgt. Matsen did, in fact, make the sexually harassing statement to him. Dkt. 20, Declaration of Kyle L. Payment, p. 2.

Ms. Roiko also interviewed Psychology AssociateTara Lund who assessed Mr. Payment after he made the PREA complaint, and Grievance Coordinator Dennis Dahne. Mr. Dahne had no additional information. Ms. Lund stated that she spoke with Mr. Payment who told her that he was not going to harm himself, to leave him alone, and that he was "just playing chess." Dkt. 15, Roiko Decl., ¶ 8 and Attachment C. Mr. Payment states that he was not seen by Ms. Lund until March 27, 2013 and when she came to his cell, he was playing chess with another inmate. Dkt. 20, p. 3 (with explanation of how single man cell chess is played).

Ms. Roiko also reviewed a video tape of the escort. She states that there are no sexually harassing statements made by any of the staff to Mr. Payment while the escort video was turned on. However, "immediately prior to the camera being turned off," she heard Mr. Payment stating to one of the staff "You been raping your daughter." Dkt. 15, Roiko Decl., 6 and Attachment C. Mr. Payment denies making this statement. He also contends that there is no

REPORT AND RECOMMENDATION - 3

evidence that he made this statement because the video does not have audio and none of the escorting officers reported that he made this statement. Dkt. 20, p. 3. He further states that during the disciplinary hearing that was conducted by Douglas McCarty, it was found that the video was visual only and Mr. McCarty stated on the record that there was no audio portion to the video. Dkt. 20, Payment Declaration, pp. 11-12. The escort video was not provided to the Court.

On April 8, 2013, thirteen days after the alleged incident, the PREA Review Committee (consisting of Ms. Roiko, Mike Wayman, and Eric Jackson) met to review Mr. Payment's claims. Based on a review of Ms. Roiko's investigation report, the committee found Mr. Payment's complaint against Sgt. Matsen to be unfounded and recommended that Mr. Payment be infracted for sexual harassment and providing false or misleading information during any stage of an investigation of sexual misconduct. Dkt. 15, Roiko Decl., ¶ 7 and Attachment D. On the same day, Ms. Roiko wrote a serious infraction report against Mr. Payment for providing false or misleading information regarding his PREA claim against Sgt. Matsen. She concluded that none of the escort officers corroborated Mr. Payment's claim that Sgt. Matsen made any sexually harassing statement, the escort video did not corroborate Mr. Payment's account, CUS Swain was not at the facility that week, and the Psychology Associate who performed Mr. Payment's PREA assessment was told by Mr. Payment to leave him alone as he was "just playing chess." *Id*., Roiko Decl., ¶ 8. Mr. Payment received and signed the Disciplinary Hearing Notice/Appearance Waiver form and did not request any witnesses on his behalf. Dkt. 15-5, p. 4. Mr. Payment was found guilty of the infraction and sanctioned with 3 days in isolation. Dkt. 15, ¶ 8, Roiko Decl. and Attachment E. Mr. Payment states that because of the

REPORT AND RECOMMENDATION - 4

infraction, he was not considered for release back to general population for at least six months and was unable to obtain a radio or television for his cell.  Dkt. 20, Payment Decl., p. 12.

Mr. Payment appealed the guilty finding contending, among other things, that Ms. Roiko fabricated the allegation that "immediately prior to the camera being turned off [Mr. Payment] stated [to one of the escort staff] 'You been raping your daughter.'"  According to Mr. Payment, the disciplinary hearing officer stated on the record that the escort video contained no audio. Dkt. 20, Kyle Decl., p. 11.  Mr. Payment acknowledges that there was a contention (presumably at the hearing) that statements on the video were not audible because there were no speakers available but he disputes this, stating that he has used the same computer to review and listen to other audio dvds.  *Id.*

Mr. Payment's appeal was denied.  Eric Jackson, the Associate Superintendent of Programs, determined that the disciplinary hearing process was conducted in accordance with due process and WAC 137-28; Mr. Payment was provided with and/or waived 24 hours advance notice; Mr. Payment was provided an opportunity to call witnesses and present documentary evidence on his behalf; the finding was made by an impartial hearing officer; a written statement of the findings and sanctions including the evidence relied on and the reasons for the sanction was provided to Mr. Payment, and the sanction was in accordance with Presumptive Sanction Guidelines WAC 137-28.  Dkt. 15-5, p. 8 (Disciplinary Hearing Appeal Decision).

**B.     Mental Health Condition**

According to DOC records and the declaration of Dr. James Davison, Jr., Psychologist 4 at the SCCC, Mr. Payment had his first mental health encounter on June 7, 2004 and manifested a number of clinical conditions.  His record reflects he has been prescribed a variety of psychotropic medication regimens.  Mr. Payment presented chronic maladaptive behaviors (e.g.,

REPORT AND RECOMMENDATION - 5

impulsivity in areas that are potentially self-damaging; inappropriate, intense anger; and transient, stress-related paranoid ideation) that are suggestive of a likely borderline type Personality Disorder. Dkt. 16, Declaration of James Davison, Jr., ¶¶ 2-4. According to Dr. Davison, behavioral and attitudinal inflexibilities are hallmarks of personality disorders. These tendencies can become increasingly "serious" as the individual perceives the implementation of limitations upon the expression of his/her behavioral and attitudinal repertoire. However, such "seriousness" as expressed by individuals diagnosed with personality disorder does not typically present as indicative of or equivalent to those conditions traditionally seen as debilitating of mental status. *Id.*, ¶ 5.

Dr. Davison states that Mr. Payment may have been likely to increase his maladaptive behaviors in response to the sanction of isolation for 3 days. However, as for a worsening or exacerbation of a "mental illness" in the tradition of Axis I diagnoses, it is Dr. Davison's opinon that Mr. Payment's mental health condition was not exacerbated by the sanction of isolation for 3 days. Dkt. 16, Davison Decl., ¶ 6.

## STANDARD OF REVIEW

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local

REPORT AND RECOMMENDATION - 6

rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

## DISCUSSION

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

**A.     First Amendment - Retaliation**

To establish a retaliation claim, an inmate "must show that a prison official took some adverse action against an inmate because of that prisoner's protected conduct, that the action

REPORT AND RECOMMENDATION - 7

chilled the inmate's exercise of his constitutional rights, and the action did not advance a legitimate correctional goal." *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). The plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (*quoting Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.1995)). A plaintiff satisfies this burden "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 1115 (internal citations and quotations omitted). In addition, Mr. Payment's retaliation claims must be evaluated in light of the deference afforded to prison officials. *Id.* (citing *Pratt*, 65 F.3d at 807).

Mr. Payment contends that immediately after he filed his PREA complaint (protected First Amendment conduct), Ms. Roiko and Mr. Glebe took adverse action against him by issuing a prison disciplinary infraction accusing Mr. Payment of filing a PREA containing unfounded allegations. Mr. Payment argues that Ms. Roiko never interviewed him to allow him to provide additional or clarifying information and made no attempt to identify and interview other inmates in the surrounding cells who, Mr. Payment contends, would have been able to hear what transpired as well as the other escort officers. Dkt. 20, p. 3.

The disciplinary hearing officer noted that Mr. Payment was found guilty based on "staff reports" and the sanction (3 day isolation) was based on "submitted documentation meet some evidence that offender provided false or misleading statements." Dkt. 15-5, p. 6. The Court notes that in the prison disciplinary context, a determination of whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether

REPORT AND RECOMMENDATION - 8

there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 454–55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Here, the record reflects that the disciplinary hearing decision was based on written staff testimony. There is no mention in the disciplinary hearing minutes and findings of a video and/or Mr. Payment's alleged statement to any escort staff. *Id.*

There is no dispute that Mr. Payment exercised his First Amendment free speech right by filing the PREA complaint. The dispute is whether Defendants took adverse action against him because he filed the PREA complaint and whether the adverse action chilled Mr. Payment's free speech and did not advance a legitimate correctional goal.

Mr. Payment's PREA complaint was found to be unsubstantiated by prison officials. There is no evidence that Defendants were motivated by the desire to retaliate against Mr. Payment for filing the PREA complaint. Immediately after he filed his emergency grievance, a PREA investigation was begun. Although Mr. Payment believes that Ms. Roiko should have interviewed him and other inmates around his cell, he does not explain how further clarification of his statement would have affected the investigation and there is no evidence that any inmates possessed knowledge pertinent to the investigation. Moreover, Mr. Payment was provided an opportunity to call witnesses and present documentary evidence on his own behalf at his disciplinary hearing but did not do so.

The evidence, viewed in the light most favorable to Mr. Payment, supports the conclusion that the infraction issued by Ms. Roiko was based on the results of her investigation and committee review of her investigative findings. There is an absence of evidence to show that the infraction issued for a retaliatory intent rather than to advance a legitimate correctional goal of

REPORT AND RECOMMENDATION - 9

preventing inmates from providing false and misleading information during any stage of an investigation of sexual misconduct.

The Court concludes that Mr. Payment has failed to raise a genuine issue of material fact as to his First Amendment retaliation claim and that the claim should be dismissed.

**B.      Eighth Amendment – Exacerbation of Mental Health**

Mr. Payment alleges that he suffers from post-traumatic stress disorder and that this illness was exacerbated when Ms. Roiko and Mr. Glebe caused him to be placed in isolation for three days. Dkt. 5, p. 12. He contends that this resulted in cruel and unusual punishment in violation of the Eighth Amendment.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference includes denial, delay or intentional interference with a prisoner medical treatment. *Id*. at 104-05. To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *U.S. v. Martinez*, 954 F.2d 1050 (5th Cir. 1992). A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *Martinez*, 954 F.2d at 1059. A prison official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 835. Deliberate indifference requires more culpability than ordinary lack of due care

REPORT AND RECOMMENDATION - 10

for a prisoner's health. *Id*. at 835.  In order to prevail on a claim of deliberate indifference, the plaintiff must prove that the prison official was (1) actually aware of facts from which an inference could be drawn that a substantial risk of harm exists; and (2) that the official actually drew the inference; but (3) nevertheless disregarded the risk to the inmate's health. *Farmer*, 511 U.S. at 837-38.

The evidence reflects that Mr. Payment has been prescribed a variety of psychotropic medication and according to Dr. Davison, Mr. Payment presented chronic maladaptive behaviors such as impulsivity in areas that are potentially self-damaging, inapproprioate, intense anger, and transient stress-related paranoid ideation that are suggestive of a likely borderline type personality disorder.  Dr. Davison opines that while Mr. Payment may have been likely to increase his maladaptive behaviors in response to being placed in isolation for three days, his condition was not worsened or exacerbated by his three day stay in isolation.  Dkt. 16, Davison Decl., ¶¶ 4-6.  Mr. Payment provides no evidence to the contrary.  Moreover, there is no evidence that either Ms. Roiko or Mr. Glebe knew or should have known that three days in isolation would or could cause a substantial risk of harm to Mr. Payment.

The undersigned concludes that Mr. Payment's mental health condition is not considered a serious medical need and there is no evidence to show that Defendants were aware or should have been aware that Mr. Payment's borderline personality disorder precluded an isolation sanction.  Accordingly, his Eighth Amendment claim should be dismissed.

**C.    Conspiracy**

Mr. Payment alleges that the Defendants "conspired" to charge him with a false rule violation in order to conceal staff sexual harassment in violation of his federal constitutional rights.  Dkt. 5, at 12-13.  In order to establish liability for a conspiracy in an action brought under

REPORT AND RECOMMENDATION - 11

§ 1983, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir.2010) (*quoting Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir.1999)).

Mr. Payment offers no facts to demonstrate that there any actual meeting of the minds among the named defendants to violate his federal constitutional rights. The Court recommends that his conspiracy claim be dismissed.

**D.      Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity from damages. Prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. In analyzing a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As noted above, the Court finds that Mr. Payment has failed to present a triable issue of fact as to his claims against Defendants and therefore, the Court need not further address the issue of qualified immunity.

REPORT AND RECOMMENDATION - 12

**CONCLUSION**

Based on the foregoing, the Court finds that Defendants' motion for summary judgment (Dkt. 14) should be **GRANTED** and all claims against them **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the Jackson for consideration on **July 24, 2015,** as noted in the caption.

**DATED** this 6th day of July, 2015.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13